# Llewellyn's Appeal.

1. Labor and services which are entitled to priority of lien by virtue of the Act of April 9th 1872 (P. L. 47), must be such, as in the course of a regular and permanent employment, contribute directly or indirectly to the particular, permanent and continuous use of "works, mines, manufactory or other business," and it is immaterial whether such labor is skilled or unskilled in the particular art or craft.

2. Labor or services contributed to the construction and equipment of such works, mines, manufactory or other business, being only temporary and preliminary to their operation, are not within the purview of the Act.

3. Labor, however, of whatever kind, that is permanently employed to make repairs in such "works, mines, manufactory or other business," is within the protection of the Act. It is the permanency of the employment, and not the kind of labor, which contributes to the particular, permanent and continuous use of such works, etc., which is the test under the Act.

4. C. leased an old mill property which had not been in use for many years, and was badly out of repair, and employed carpenters, millwrights, and blacksmiths, in making the repairs and improvements necessary before the mill could be put in operation for rolling iron. Upon a sheriff's sale of all the property on the premises under executions against C., claims were instituted upon the fund thereby realized:

*Held,* that the labor bestowed upon such repairs being merely temporary and preliminary in its character to the general employment for which the works were designed, it was not embraced within the protection of the Act of April 9th 1872, sec. 1 (P. L. 47).

*Held,* that one who contracted to deliver at the mill limestone to be used in the manufacture of pig iron for a fixed sum per load, though he delivered it by his own labor, nevertheless not being employed upon any materials belonging to C., was not entitled to preference under the Act.

5. Pardee's Appeal, 4 Out. 407, and Gibbs & Sterrett Co.'s Appeal, Id. 528 followed.

April 26th and 27th 1883. Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark, JJ. Paxson, J., absent.

[Llewellyn's Appeal.]

Certiorari to and appeal from the Court of Common Pleas of *Clinton county :* Of January Term 1883, No. 49.

This was a certiorari and appeal of L. R. Llewellyn, Gabriel O. & M. P. Stiver, John Keener, William McGregor, John Mayes, Charles Parker and Robert Miller from the decree of the said court, dismissing their exceptions to and confirming the report of an Auditor appointed to distribute the proceeds of a sheriff's sale of certain property of Austin Curtin & Co.

Before the Auditor (S. M. McCormick, Esq.), the facts appeared to be as follows : On March 24th 1880, Austin Curtin & Co. leased an old furnace situated in Mill Hall, Clinton county, for the purpose of manufacturing pig-iron for rolling mill purposes. Many years before the furnace had been used for that purpose, but at the time of the said lease it had been idle for a period of twenty-four years and was greatly out of repair. The lessee reconstructed and repaired the mill property, and on October 6th 1881, the work of manufacturing pig iron was resumed. Subsequently, other repairs were made by rebuilding an old bridge house, upon which ore, coke and limestone were deposited for filling the furnace. On December 21st 1881, the sheriff of Clinton county levied upon all the lessee's personal property and rights in said furnace under a fi. fa., issued by the Bellefonte Nail Co., Limited, against Curtin & Co., and on January 14th 1882, sold the same for $2268.71, which sum constitutes the fund for distribution.

Before the Auditor appointed to distribute the proceeds, the said Llewellyn, Stivers, Keener, McGregor, Mayes, Parker and Miller (the appellants), and others, claimed to be first paid their wages for labor under the Act of April 9th 1872. Llewellyn was a millright and carpenter, and his claim was for carpenter repairs to the furnace property. Similar claims for work done in the repair and reconstruction of said furnace property were made by Keener, McGregor, Parker and Mayes, all of whom were carpenters and millwrights. None of these claimed to have assisted in the actual manufacture of iron. The Stiver Brothers owned a blacksmith shop situated near the furnace, where they had carried on the business for twelve years previous to the recommencement of the furnace. Their claim was for work done in shoeing horses and repairing wagons and tools used in the operation of the furnace, for which, generally, they charged by the hour. They disclaimed any connection with the furnace. Robert Miller, who was a farmer, owning a team of horses, agreed to haul and deliver limestone at the furnace for use of Curtin & Co., for $1 a ton, and his claim was for his actual labor in so hauling. He testified that he paid the owners of the quarry fifteen cents per ton for the privilege of quarrying the limestone and then having

quarried it, personally hauled it with his own team to the furnace. He claimed to be compensated at the rate of sixty-five cents per day.

The Auditor allowed the claim of Robert Miller for the work which he had personally done in hauling the limestone, but disallowed the claims of Llewellyn, Stivers, Keener, McGregor, Mayes and Parker, on the ground that they were not within the provisions of the Act of 1872, and he awarded the balance of the proceeds to certain judgment creditors.

Exceptions were filed to the allowance of Miller's claim by the Bellefonte Nail Co. Limited, the execution plaintiff, and by the said labor claimants to the disallowance of their claims. The latter exceptions were dismissed by the court, but the former, as to Miller's claim were sustained, the court holding that Miller was not within the operation of the Act of 1872. Whereupon this appeal was taken by the said labor claimants, the action of the court in disallowance of their claims being assigned as error.

*Seymour D. Ball*, for the appellants. These claims come within the spirit and even the letter of the Act. It is a remedial statute favoring all who labor with their own hands, at any labor wherever or howsoever performed necessary to carry on the manufacture of iron, at a furnace, " or other business where clerks, miners, or mechanics are employed, whether at so much per diem or otherwise:" Act 9th April, 1872, § 1, P. L. 47; Seider's Appeal, 46 Pa. St. 57. In Wentroth's Appeal, 82 Pa. St. 469, the court would have sustained the claim of Snyder, if he had done the work himself with the aid of helpers; his claim was rejected, because he contracted to deliver at the saw mill certain logs, cut and peeled on a certain tract of land, which he fulfilled " by hiring teams and drivers, but did no hauling himself." In the present case, Miller's contract with Curtin was fulfilled by his own manual labor, with his own team, and he is justly entitled to the lien for his labor, provided by the Act. He is not a contractor, in such a sense as will defeat his claim. The work of his own hands is protected.

*T. C. Hipple*, for the appellee. The terms works, mines, manufactories or other business are used synonymously. These words are intended to designate the general character of the business or operation being carried on, rather than to refer to buildings or premises in which such business is conducted. Then what kind of wages are intended to be preferred as a lien under the Act of 1872 ? Why, clearly such wages as are earned for labor and services rendered in operating the business, not in erecting, preparing and fitting any buildings or premises for the business : Pardee's Appeal, 4 Out. 408.

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

On the 24th day of March 1880, Austin Curtin & Co., became the lessees of the old Mill Hall Iron Furnace, in Clinton county. It had been abandoned for some twenty-four years, and in consequence the works were dismantled, the buildings decayed and the machinery almost destroyed. The whole property was so dilapidated that it was unfit for use, for the purposes for which it was originally designed. In order, therefore, that the furnace might be operated it was necessary that the property should be repaired and reconstructed.

The works had been originally used, and were leased to A. Curtin & Co., to be used, in the manufacture of pig-metal from iron ore for rolling mill purposes. These repairs were made from May 2d 1881, to December 20th 1881, inclusive, and were so completed by the 6th October 1881, that about that time the works were started, and the manufacture of metal resumed. After the works were started, however, the old bridge house, upon which was deposited the ore, coke and limestone, used in the manufacture of iron, was found to be insufficient for the purpose, and it was rebuilt by the lessee.

On the 21st day of December 1881, the sheriff of Clinton county levied upon all the lessee's rights and personal property connected with the business upon a writ of fieri facias, issued by the Bellefonte Nail Co., Limited, against A. Curtin & Co., the lessees, and, on the 14th January 1882, sold the levy for $2,268.75, and this sum constitutes the fund for distribution.

The appellants, L. R. Llewellyn, John Keener, William McGregor, John Mayes and Charles Parker were carpenters, or millwrights, and Gabriel O. and M. P. Stiver were wagonmakers and blacksmiths, who had been employed by the lessees and labored in making the repairs and improvements upon the furnace property above stated. They claim the right, under the Act of 9th April 1872, to receive out of the fund for distribution, the wages for their labor, in preference to the execution creditor, having given notice of their claim under that Act.

Were the appellants named, or any of them, of the class of mechanics or laborers, embraced within the protection of the first section of the Act of 1872? We think the learned court below was certainly right in holding that they were not.

It is admitted that none of these appellants were employed in the manufacture of iron, nor were they engaged in operating the works in any branch or department of the business to which they were especially devoted. The manufacture of pig metal was the particular, permanent and continuous business of the works, and the class of laborers or mechanics, within the

[Llewellyn's Appeal.]

meaning of the Act, we think, is such as is employed in this business.

In order to start the manufacture of iron it is requisite, first to construct the buildings, supply the machinery and equip the works ; the labor bestowed upon the construction and equipment is merely temporary and preliminary in its character to the general employment for which the works are designed. The construction of a manufactory is one thing and the operating of it is another ; the price of the materials furnished and labor done in the former is preferred, under the mechanics' lien law, whilst the wages of the labor performed, in the latter, is covered by the provisions of the Act of 1872.

In Pardee's Appeal, 4 Out. 408, we held that the business of cutting saw-logs and driving them to the place of manufacture, is not such as is contemplated by the Act of 1872. Justice STERRETT, in delivering the opinion of the court in that case, says : " The words ' works, mines, manufactory,' thus employed in the Act, have a definite signification, well known in the general and popular acceptation. Ex vi termini the branches of business, intended to be described by them, are in a certain sense complete and independent, and of a fixed and permanent character, as opposed to a temporary employment, that is merely incidental to any particular branch of business. "

In the Gibbs & Sterrett M'f'g Co.'s Appeal, 4 Out. 528, we held that a person employed to drill oil wells, at a certain price per foot, who had no interest in the land, nor the oil, but who was simply a contractor, engaged in drilling wells for different persons, moving his tools from place to place as occasion might require, did not belong to either of the classes of employers, designated by the Act ; that the contractor, mentioned in the Act, must be the operator of the wells, and his property, not that of the mere driller, is the property from which the laborer is to be paid. As the employer must be the operator so the employee to receive the protection of the Act must be the operative.

It does not follow, however, that the labor preferred is that which is skilled in the particular art or craft pursued alone, all who are engaged as operatives, whether as ore diggers, teamsters, furnace-men or common laborers.

A carpenter, a blacksmith or machinist, regularly employed in a manufactory to conduct continuously the repairs and regulate the machinery—indeed any laborer who by a continuous employment contributes to the general work or manufacture, is within the meaning of this Act, but the labor of those who are only temporarily employed in repairing, are in no sense operatives.

The claim of Robert Miller one of the appellants, was for a

[Marr *v.* Marr.]

balance owing to him for quarrying, hauling and furnishing limestone. He paid fifteen cents per ton to Furst Bros. for the privilege of their quarry and delivered the limestone to A. Curtin & Co. at $1 per ton. He hauled with his own teams, and was to receive pay according to his contract. He employed hands to assist him and paid them out of his own pocket. He was not employed upon any materials of the company; he was an independent contractor, and although he delivered the limestone in part at least by his own labor, he is not entitled to preference under the Act of 1872.

The decree is therefore affirmed, and the appeal dismissed, at the cost of the appellant.