### In re BAUMBLATT.

(District Court, E. D. Pennsylvania. October 16, 1907.)

#### No. 2,621.

BANKRUPTCY—DEBTS ENTITLED TO PRIORITY—"CLERK" DEFINED.

The word "clerk," as used in Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], giving priority to debts for wages due to "workmen, clerks, or servants," earned within three months prior to the bankruptcy, includes a bookkeeper; and the right of a clerk to priority is not affected by the fact that his employment by the bankrupt was not exclusive, but that he also did work for others.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 536.]

In Bankruptcy. On certificate from referee concerning claim of Francis J. Thorn to priority.

See 153 Fed. 485.

J. Louis Breitinger, for trustee.
John M. McConaghy, for claimant.

J. B. McPHERSON, District Judge. The ground upon which the claimant asks to be allowed priority is that he was a bookkeeper for the bankrupt at the agreed sum of $50 per month, and that his wages for more than three months preceding the bankruptcy are still unpaid. The facts appear from the following opinion of Referee Richard S. Hunter, Esq.:

"The testimony of the claimant as to the salary due was that he was employed by the Tradesmen's Trust Company, the assignee of Baumblatt's predecessor in business, from November 17, 1905, to May 1, 1906, upon a

salary of $50 a month; that, when Baumblatt took over the business under an arrangement with the creditors, he said to the claimant, 'When you discontinue with the Tradesmen's Trust Company, go right on under the same conditions.' There was apparently no further conversation between them at that time; but the claimant testifies that Baumblatt knew the amount that was being paid him by the Tradesmen's Trust Company. The claimant kept the books and made out monthly reports, stopping at the bankrupt's place of business whenever necessary, and nearly every day; sometimes for three or four hours, and sometimes an hour. He made entries in the daybook, cashbook, and ledger. He remained in service from May 1, 1906, to September 1, 1906.

"On cross-examination of the claimant nothing further was elicited, except that the claimant was employed in various other businesses during the time that he kept the books.

"The bankrupt testified that he was positive he made the arrangement with the claimant for $25 a month, and that he was paid every month, with the exception of the last two months, July and August; that the claimant made the general entries in the books, but that another bookkeeper was employed to do the minor work. He added: 'That was all that I was able to pay. He did it more out of friendship for me than for a business consideration.'

"There is here a conflict of testimony. Both witnesses appear to be credible and believe that they are telling the truth.

"There is no doubt, however, that, in the absence of any agreement for a definite salary, the claimant could have shown services to the value of $50 a month. This is practically admitted by the bankrupt in the sentence last quoted from his testimony. It seems upon the whole more likely that the claimant's recollection on this subject should be correct than that of the bankrupt, who was harassed at that time in many ways.

"Is the amount due as a priority? The act gives priority to workmen, clerks, or servants. The distinction is drawn by the trustee between a clerk who is regularly employed by the bankrupt and remains all the time in his place of business, and an accountant called in for a special purpose, and for this distinction the decisions upon the Pennsylvania act of 1872, especially Llewllyn's Appeal, 103 Pa. 458, are invoked to show that the employment must be regular and permanent.

"Without considering how far the Pennsylvania act of 1872 can be held to influence a decision under the bankruptcy act, enough appears from the evidence to show that the services were of a continuous nature, and such as might extend for years to come to the business as carried on by Baumblatt.

"The referee finds that the claimant is entitled to a balance of salary of $215, of which $150 is allowed as a priority."

Upon exception by the trustee to the award of priority, the referee added:

"Counsel for trustee urges upon the referee that the occupation of the claimant was not exclusive, that he spent but a few hours each day with Baumblatt, and that his service was of a sort which must at some time terminate. This, however, does not appear to the referee to be the material circumstance. Exclusive employment by the bankrupt has never been considered necessary to constitute the claimant a clerk within the meaning of the act. Thorn was continuously employed at a regular salary per month, with no indication as to the length of his employment, and with a strong presumption on the face of the evidence that his services would continue necessary in Baumblatt's business for an indefinite time. This is, in the judgment of the referee, sufficient to entitle him to priority."

Only a few words more need be said. Whatever may be the precise scope of the word "clerk," as it is used in clause (b) 4 of section 64 (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), I think it certainly includes a person who regularly keeps a bankrupt's books under the contract and in the manner set forth by the learned referee. Under the act of 1867, Judge Lowell decided that the word

included "a person employed for a temporary service in adjusting the books and accounts of a bankrupt" (Ex parte Rockett, Fed. Cas. No. 11,977); and this meaning is broader than is required to support the claim under consideration. If the well-known rule of statutory interpretation is followed, the act of 1898 must, I think, be held to have used the word in its ordinary signification; and, if this decision be correct, it scarcely admits of question that in common speech a "clerk" includes a bookkeeper, as well as other classes of servants.

The decision of the referee awarding priority to the claimant is affirmed.