## Appeal of the Gibbs & Sterrett Manufacturing Company.

1. One who, by special contract, undertakes the drilling of oil wells, and in such work employs laborers, is not an employer or "contractor" within the purview of the Act of April 9th 1872 (P. L. 47), giving a preferred lien to the wages of certain classes of employés.

2. Upon distribution of the proceeds of the sale under execution, of drilling tools used in such business, the employés of such person are not entitled to priority for their unpaid wages out of the fund.

May 9th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *McKean county*: Of January term 1882, No. 156.

Appeal of the Gibbs & Sterrett Manufacturing Company from the decree of said court sustaining the exceptions of certain labor claimants to the report of an auditor appointed to distribute the proceeds of a sheriff's sale of personal property.

The facts as reported by the auditor, W. B. Chapman, Esq., were as follows :

The Gibbs & Sterrett Manufacturing Company, in May Term, 1881, recovered two judgments against P. M. Lewis, aggregating $442.03.  On March 2d, 1881, fi. fas. 18 and 19, May Term, were issued upon the above judgments, and on March 16th the sheriff levied the writs and seized the property of Lewis, the defendant, which consisted of one complete set of tools used in drilling oil wells.  On March 23d the property was sold, and the proceeds of the sale, $500.04, were paid into court, after deducting costs.

Before the sale, John Cunningham, W. J. Basoom, Robert R. Young and W. R. Richardson respectively served upon the sheriff written notice that they claimed a lien upon the said property for wages of manual labor, performed with the tools and the property levied upon, in drilling oil wells, from December 2d 1880, to March 8th 1881, aggregating $633.39.

In the fall of 1880, and before any of the labor now claimed was performed, the defendant contracted with Samuel Smith to drill for him eight oil wells on Smith's land in Otto township, McKean county.  Smith was to build the carpenter rigs, and to furnish all machinery, tubing, casing and fittings for the well at his own expense, and to pay Lewis for the drilling of the oil wells the sum of sixty-five cents for every foot so drilled. Lewis, on his part, was to furnish his own drilling tools, to furnish, perform, or caused to be performed all the labor, and to pay all the expenses in the drilling of the oil wells, he simply

receiving the sum of sixty-five cents from Smith as his full compensation for performing the labor and drilling the wells. This contract was fully understood by the labor claimants. Lewis was a contractor who drilled oil wells for different persons, moving his drilling tools from well to well, and when a well was drilled and connected with a tank, the work of construction was completed, and he took his tools away. He had not, nor was he to have, any interest in the land on which he was drilling wells, nor in the oil he produced therefrom. Smith, the owner of the land, had no interest in the property sold upon the fi. fas.

Petroleum oil cannot be produced in the county at that particular locality, except by drilling wells to a depth of from 1,500 to 1,800 feet, and the usual way is to drill wells just as they were drilled by Lewis, and with such tools as were used by him. The drilling tools are not used after the completion of the wells to produce oil therefrom, as the oil is brought to the surface by the force of the gas usually found at the bottom of oil wells, and when not brought to the surface by force of gas, then the producer, operator, or owner of the well is compelled to pump the well to get the oil.

The auditor was of opinion that the defendant in the execution was not such a contractor as is contemplated by the Act of April 9th 1872; and further, that the personalty sold was not connected with the mine within the meaning of said Act. He accordingly awarded the fund to the plaintiff in the execution.

To this report the labor claimants filed the following exceptions:

"First. That the auditor, having found that the drilling of oil wells and the producing of oil is mining, and within the provisions of the Act of April 9th 1872, erred in his conclusion of law in not finding that the labor claimants above named, had a lien on the tools and property of the contractor Lewis, the defendant in above stated writs, the tools and property having been levied upon under said writs and sold by the sheriff while said tools and property were being used in drilling the oil wells on the Smith lease under his contract with Smith, and while said drilling was in progress under said contract, and the labor claimants above referred to, were in possession of and at work with said tools and property, completing said contract on said Smith lease.

"Second. That the auditor erred in not awarding said fund to the above named labor claimants or so much thereof as would satisfy their claims (not in excess of two hundred dollars each), in accordance with the provisions of the act of April 9th 1872, instead of awarding said fund to the execution creditors of said P. M. Lewis, defendant."

4 OUTERBRIDGE—34

The court entered a decree sustaining the exceptions, and awarded the fund to the labor claimants, whereupon the plaintiff in the execution took this appeal, assigning for error the said decree.

*F. D. Reeves* and *Geo. A. Berry*, for the appellants.

*J. C. & Geo. A. Sturgeon*, for the appellees.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The conclusions of the learned auditor in this case were correct, and the fund should have been decreed, in accordance therewith, to the appellants on whose execution it was raised. *Primâ facie* they were entitled to the money, and the appellees who claimed it as preferred lien creditors, under the Act of April 9th 1872, failed to bring themselves within the provisions of the act.

The facts found by the auditor are briefly these. In the fall of 1881, before any of the labor embraced in the respective claims was performed, Lewis, the defendant in the execution, contracted with Smith to drill eight oil wells, on land owned in fee by the latter. Smith agreed to construct the necessary carpenter rigs, furnish all the machinery, tubing, casing and fittings for the wells at his own expense, and pay Lewis sixty-five cents per foot for drilling. Lewis was to furnish his own drilling tools, perform or cause to be performed all the labor, and pay all the expenses of drilling the wells. He had no interest in the land on which they were located, nor in the oil to be produced therefrom; nor had Smith, the owner of the land, any interest in the drilling tools sold on the execution. Lewis was simply a contractor engaged in drilling wells for different persons, moving his tools from place to place, as occasion might require, and using them there until the well was completed and connected with a tank. His work was then finished and his tools removed.

The questions naturally suggested by these facts are: 1st. Did Lewis properly belong to either of the classes of employers designated by the Act? 2d. Was the property, sold on the execution, so connected with and used in carrying on any branch of business described in the Act as to subject it to the lien contemplated by the first section thereof?

A proper construction of the Act answers both these questions in the negative. The several classes of employers, from whom wages must be due in order to entitle their employees to a lien under the Act, are designated therein, "either as owners, lessees, contractors, or under-owners of any works,

mines, manufactory, or other business." Lewis was clearly neither owner, under-owner nor lessee of the oil wells. He had no interest whatever therein, nor was he a contractor within the meaning of the Act. The word "contractors" as used therein is applicable only to persons employed by the owner or lessee of a mine to operate the same, produce the mineral, coal, iron, or whatever it may be, for an agreed compensation, and does not embrace those who undertake to perform some special service in the construction of works, or the opening of mines preparatory to their being operated.

The property also which is subject to the lien must be connected with the works or mines and used in carrying on the particular business contemplated by the construction of the one and the opening of the other ; and not such property as may be used, by one who has no interest in the operation of the works or mines, under a special contract to do some special work in the preparation of either for active operation. The phrases, " or other property connected therewith, in carrying on said business," and " property in and about or used in carrying on the business or in connection therewith," employed in the Act, clearly indicate that it was not intended to apply to the tools of an itinerant mechanic, such as Lewis evidently was in this case.

The conclusions of the learned auditor are so fully sustained by his report that further comment is unnecessary.

Decree reversed at the costs of appellees ; and it is now ordered that the fund be distributed in accordance with the report of the auditor.