## Sproul, Receiver, Appellant, v. Murray.

*Construction of statutes—Intent—Presumption—Re-enactment of language which has been judicially construed.*

When the legislature re-enacts language which has received judicial construction it carries the same construction with it. But this is a presumption merely, in aid of the real inquiry, which is for the legislative intent. If that be clear, all presumptions must give way to it.

*Wages claims—Acts of 1872 and 1883—Business.*

Under the act of June 13, 1883, P. L. 117, the class of employers men-

tioned in the act of April 9, 1872, P. L. 116, is enlarged by necessary implication to correspond with the classes of employees named, and the words " other business " in the act include all kinds of business in which any of the classes of employees named in the act are engaged.

*Wages claim—Sale—Business.*

Claimants were tailors working in a tailor shop connected with a merchant tailoring store. The shop and store were carried on as part of the same business though in different apartments. The contents of the store were sold under execution. *Held* that claimants were entitled to a preference for their wages out of the fund realized by the sale.

Argued April 26, 1893. Appeal, No. 448, Jan. T., 1893, by J. W. Sproul, receiver of the Corry National Bank, from order of C. P. Erie Co., Feb. T., 1892, No. 427, confirming auditor's report distributing fund realized by sheriff's sale in Sproul v. Murray. Before WILLIAMS, MCCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Distribution of fund raised by sheriff's sale.

From the report of the auditor, F. M. McClintock, Esq., it appeared that James Carney and other wages claimants were employed by defendant as tailors in a tailor shop connected with his merchant tailoring store. The fund for distribution was realized almost entirely by the sale of the goods in the store. One claimant testified that they worked on custom made clothing, and also in dull seasons worked up cloth which went into the ready-made stock. They also altered ready-made clothing when necessary. Another witness testified that " lots of the stock on hand at time of sheriff's sale, which was made up from remnants, etc., were made up by claimants during the dull season." The auditor found the tailor shop and the store were carried on as one business, and accordingly awarded a preference to the wage claims. Exceptions to the auditor's report were dismissed by the court in an opinion by GUNNISON, P. J.

*Errors assigned* were that the court erred (1) in finding that while the act of 1872 would not embrace and give to these laborers a preference, yet that while the act of 1883 does not enlarge the class of employers in terms, it did in fact, for the reason that the class of employees were enlarged; (2) in finding, or ruling, that the goods of the defendant, sold by the sheriff, were used in and about and connected with the carrying

on of the business in which said laborers were employed and worked for defendant; (3) in finding that the business of defendant was such a business as is contemplated by the said acts of 1872 and 1883, in giving a prior lien to an execution creditor, in favor of workmen employed in and about and connected with the carrying on of the same; (4) in finding that the said laborers were engaged in labor for defendant, which was necessary to carry on the business of defendant, in that department, that the goods sold by the sheriff were connected with; (5) in finding that the report and distribution as made by the auditor were correct and according to law, and in dismissing the exceptions of plaintiff and allowing the said labor claims; (6) in not reversing the report and distribution of the auditor, and in not awarding the fund to plaintiff.

*J. W. Sproul, C. Geo. Olmstead* with him, for appellant, cited: Jacobs v. Woods, 14 W. N. 237; White's Ap., 15 W. N. 313; Pratt's Ap., 5 Pa. C. C. R. 264; Pardee's Ap., 100 Pa. 408.

*C. P. Rogers, Jr.,* for appellees, cited: Clymer Distillery Co., 2 Pa. C. C. R. 111; John's Est., 2 Ches. Co. R. 458; Topper v. Krise, 1 Pa. C. C. R. 300; Weaver v. Wheaton, 2 Pa. C. C. R. 428; Alderfer v. Beyer, 2 Pa. C. C. R. 425; Periepi v. Frankenfield, 1 Montg. Co. L. R. 24; s. c., 17 Phila. 637; Central Newspaper Union v. Gracie, 7 Pa. C. C. R. 188; Wiand v. Himmelwright, 8 Pa. C. C. R. 663; Schwartz v. Rhoades, 6 Pa. C. C. R. 385; Cary v. Ewing, 7 Pa. C. C. R. 1; Buckwalter's Est., 3 Pa. C. C. R. 315; Lewellyn's Ap., 14 Pitts. L. J. 480.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893:

The auditor and the court below have found that the tailor shop proper, where these claimants worked, and the merchant tailoring store, from the sale of which nearly all the fund was derived, were parts of the same business, carried on together as one, though in different rooms. We see no good reason to doubt the correctness of this conclusion, and the case therefore comes within the express words of the act of June 13, 1883, P. L. 117, that certain wages shall be first paid out of the proceeds of the sale of the business.

This disposes of the two points made, or rather the same point in a double aspect, that the claimants were not engaged in work connected with the business that produced the fund in court, and that the property sold was not used in connection with the claimant's work.

The only remaining question is whether the business from the sale of which the fund arose was within the act of 1883. The interpretation of that act has been the source of extreme difficulty. It is by its title an act to amend section one of the act of April 9, 1872. That act had already received a construction that its general words " other business where clerks, miners or mechanics are employed " must be construed in connection with the leading words of the enactment, " works, mines, manufactories," etc., and limited to other business ejusdem generis: Pardee's Appeal, 100 Pa. 408. The act of 1883 in amending the prior act, uses the same language that had already been construed, moneys due for labor and services, " from any person or persons or chartered company employing clerks, miners, mechanics or laborers, either as owners, lessees, contractors or under owners of any works, mines, manufactory or *other business* where clerks, miners, or mechanics are employed." The broad question at once arises, are the words " other business " to be limited as in the previous act to business of the same general nature as those specified, or are they to be enlarged by the enlarged class of employees expressly enumerated? The difficulty of this question is shown by the fact that in more than a score of decisions the courts of common pleas of the state are nearly equally divided upon it.

The general rule of course is that when the legislature re-enacts language which has received judicial construction, it carries the same construction with it. But this is a presumption merely, in aid of the real inquiry, which is for the legislative intent. If that be clear, all presumptions must give way to it. In the present case, notwithstanding the difficulties the statute presents, we are of opinion that what may be called the enlarged or remedial construction is the one that the legislative intent calls for. The principal object of the act was to extend the scope of the act of 1872, and this is set out in the title, which is an act to amend etc. " so that wages of servant girls, washerwomen, clerks and others shall be preferred " etc.

The act of 1872 specified only wages due to " any miner, me-
chanic, laborer or clerk " from any owner, etc. of " any works,
mines, manufactory or other business where clerks, miners or
mechanics are employed." The act of 1883 after naming in its
title, servant girls, washerwomen, etc., proceeds, in its first en-
acting section, to specify, as before, miners, mechanics, laborers
or clerks, and then continues by the enumeration of twenty-
three other kinds of employees, many of whom, such as ser-
vant girls at hotels or in private families, persons employed
about livery stables, milliners, dressmakers, shirt manufacturers,
etc., could not by any latitude of construction be included in
the act of 1872. Having thus, however, enlarged the class of
employees, the act fails to enlarge the class of employers in ex-
press terms, and describes them in the same words as the pre-
vious act. But unless the class of employers is also enlarged,
we not only defeat the plain general intent of the act, but are
driven to the absurdity that servant girls in private families,
milliners, seamstresses employed by merchant tailors, etc., are
only entitled to preference for their wages when they are em-
ployed by the owners of works, mines or manufactories. To
avoid this result we must hold that the class of employers is
enlarged by necessary implication to correspond with the classes
of employees named, and that the words " other business " in
the act include all kinds of business in which any of the classes
of employees named in the act are engaged.

Judgment affirmed.