## Jacob Wolf v. J. M. Krick.    Maurer's Appeal.

*Execution—Preferred claims for wages—Act of 1872 and supplements construed.*

The labor and services which are entitled to priority of lien by virtue of the Act of April 9, 1872, P. L. 47, or its amendments, the acts of 1883 and 1891 must be such, as in the course of a regular and permanent employment, contribute directly or indirectly to the particular, permanent and continuous use of the particular works, mines, manufactory or other business. Labor or services contributed to the construction and equipment of such works, etc., are not within the purview of the acts.

The construction of a manufactory is one thing, and the operation of it is another.

Argued Nov. 11, 1896. Appeal, No. 56, Nov. T., 1895, by Casper Maurer, from decree of C. P. Lancaster Co. Nov. T., 1894, No. 47, in distribution. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Exceptions to auditor's report. Before LIVINGSTON, P. J.

The facts sufficiently appear in the opinion of the court below which, as to the question raised by exception, was as follows:

The exceptions filed by counsel for Jacob Wolf, the execution creditor, are:

1. The auditor erred in awarding to Casper Maurer the sum of $90.

2. The auditor erred in not awarding the whole fund in court to Jacob Wolf.

With reference to the claim of Casper Maurer, the learned auditor finds, as a fact, and in his report says, that, " J. M. Krick and Harry A. Hagelgans made up their minds to start a caramel factory in the now borough of Ephrata, Lancaster county. To this end a building, or more exactly speaking, a part of one, was leased from Mrs. McCaa. By the terms of the arrangement between Krick and Hagelgans, the first was to equip the building by putting in the necessary machinery. Casper Maurer is a millwright and skilled mechanic; he was employed in putting up the machinery, with general supervising power. He did so, commencing work on August 13, 1894, and finishing his work, as he calls it, on September 20, 1894. It seems he had an agreed price, which no one has called in question, and he claims a balance is due him of $87.79. That "the enterprise projected by Krick and Hagelgans ended in a failure. The caramel factory was never started, and, therefore, never ran or put in operation. That the thing seemed to have been dismantled—the machinery at which Maurer worked was sold by the sheriff of Lancaster county, on an execution issued by Jacob Wolf against J. M. Krick.

"That $300 of the proceeds in selling out Krick were paid into court, and this is now for distribution and is, undoubtedly, the proceeds of personal property, and made so by Wolf himself, which prevents from holding that Maurer's claim should have been on the real estate, and that the parties to this contention, after barring out Hagelgans, are Wolf, the execution plaintiff, and Maurer as a wage earner and preferred claimant." After referring to the law cited, he allows the claim of Maurer, $90.00, and deducts it from the fund in court.

To this allowance, exception has been taken, as we have before stated.

Is the exception well taken, and should it be sustained?

In this case the learned auditor has found as a fact, and we think correctly, that Krick was not engaged in, or employed in,

any occupation, or business, mining or manufacturing, or any business named or specified in the act of 1872, or its amendment of 1883 and 1891, at the time the labor of Maurer was done and performed, or in or about, or concerning which it was done or performed. But that he, in connection with another person, had made up their minds and proposed to go into business, the business of manufacturing caramels—to start a caramel factory. That a part of a building was leased. That Krick was to prepare the building, purchase and put in the machinery, put it up in the building and make it ready to commence operations. It appears from the evidence, and the master so finds, that Maurer was engaged, employed to prepare the building and put in, and put up the machinery furnished by Mr. Krick, and did so, or at least part of it, and the amount he charges for his labor has not been disputed, but the business never was commenced, the manufactory never finished or started, and no caramels were manufactured. The machinery which Maurer was hired to put in the building and set up, was sold by the sheriff as the property of Mr. Krick, under and by virtue of an execution issued upon a judgment held against him by one of his creditors, and the money in court, out of which Maurer claims he should be paid is, and so the auditor finds, part of the proceeds of that sale.

There can be no doubt as to the right of any miner, mechanic or laborer of any class named in the act of 1872 and its amendments of 1883 and 1891, to be paid out of the sale or transfer of the real or personal property, works, mines, manufactories or business, or other property connected therewith in carrying on the same, of said person or persons, chartered company, joint stock company, limited partnership or other partnership, by execution or otherwise. On account of the death or insolvency of such employer or employers, it shall be a lien upon said real estate or personal property, mine, manufactory, business or other property, in and about, or used in carrying on said business or in connection therewith, etc., etc., and their claims are to be preferred and first paid out of the proceeds of the sale of such real and personal property, mines, manufactory, business or other property used in and about or in carrying on said business, or in connection therewith.

To give employees such right of preference under the act of

1872 and its supplements, the employer must be actually engaged in some business, some occupation, mining, manufacturing, carrying on the same, etc., and the employment must be in connection with such business, manufacturing, mining or other business, and the wages or claim therefor must arise from the performance of labor in and about such business and in connection with the same.

. The legislature evidently intended to embrace any business in which the employers named in the act and its supplements may be employed, but there must be a business, and the employment and labor must be in connection with that business.

In White's Appeal, 15 W. N. C. 313, the present chief justice of the Supreme Court said: "It has been repeatedly held that the business contemplated by the act (1872) must be connected with works, mines or manufactories, business ejusdem generis ; that ex vi termini, the branches of business intended to be described by the words ' works, mines, manufactory,' are in a certain sense complete and independent, and of a fixed and permanent character, as opposed to a temporary employment that is merely incidental to any particular branch of business." In this case the principal business of the execution creditor was manufacturing lumber, and it was held that unless the wages claimed were earned in the prosecution of that business or in a pursuit connected with it and forming a part thereof, the claim was not covered by the act of 1872.

The act of April 9, 1872, sec. 1, declares, that, all moneys that may be due, or hereafter become due, for labor and services rendered by any miner, mechanic, laborer or clerk, from any person or persons or chartered company employing clerks, miners, mechanics or laborers, either as owners, lessees, contractors or under-owners of any works, mines, manufactory or other business where clerks, miners or mechanics are employed, whether at so much per diem or otherwise, for any period not exceeding six months immediately preceding the sale and transfer of such works, mines, manufactories or business, or other property connected therewith, in carrying on said business, by execution, etc.—shall be preferred and first paid out of the sale of such mine, manufactory, business or other property—not exceeding $200.

On June 13, 1883, P. L. 116, an act was passed entitled, "An

act to amend the first section of an act, entitled, 'An act for the better protection of the wages of mechanics, miners, laborers and others,' approved the 9th day of April, A. D. 1872, amending said act, so that wages of servant girls, washerwomen, clerks and others shall be preferred and first paid out of the proceeds of sale of the property of insolvent debtors, owing wages to such servants or employees."

Which, in amending said first section, declares, "That all money that may be due, or hereafter become due, for labor and services rendered by any miner, mechanic, laborer or clerk, servant girls at hotels, boarding houses, restaurants or in private families, or other servants and helpers in and about said houses of entertainment and private houses, porters, hostlers, all persons employed in and about livery stables, laundrymen, and washerwomen, seamsters and seamstresses employed by merchant tailors, milliners, dressmakers, clothiers, shirt manufacturers, and clerks employed in stores, hands, laborers, mechanics, printers, apprentices, hired for wages or salary, from any person or persons or chartered company employing clerks, miners, mechanics or laborers, either as owners, lessees, contractors or under-owners of any works, mines, manufactory or other business where clerks, miners or mechanics are employed at so much per diem or otherwise for any period not exceeding six months immediately preceding the sale and transfer of such works, mines, manufactory or business or other property connected therewith in carrying on said business by execution or otherwise, preceding the death or insolvency of such employer or employers, shall be a lien upon such mine, manufactory, business or other property in and about or used in carrying on said business or in connection therewith, to the extent of the interest of said owners or contractors, as the case may be, in said property, and shall be preferred and first paid out of the sale of such mine, manufactory, business or other property, as aforesaid— not exceeding $200."

And the Act of May 12, 1891, P. L. 54, entitled, "An act to amend the first section of an act, entitled, 'An act for the better protection of the wages of mechanics, miners, laborers and others, approved the 9th day of April, A. D. 1872, amending said act so that wages of servant girls, washerwomen, clerks and others shall be preferred and first paid out of the proceeds of

the sale of the property of insolvent debtors owing wages to such servants or employees, approved the 14th day of June, A. D. 1883, so that wages of farm laborers and all other laborers or clerks and tradesmen, whether employed by private individuals or corporations, joint stock companies or partnerships, shall be preferred and paid first out of the proceeds of the sale of the property of insolvent debtors." Amends said act and amended act so as to declare, " That all moneys that may be due or hereafter become due for labor and services rendered by any miner or mechanic, servant girl at hotels, boarding houses, restaurants or in private families, or any other servant and helper in and about said house of entertainment and private families, porter, hostler or any other person employed in and about livery stables or hotels, laundrymen or washerwomen, seamster or seamstress, employed by merchant tailors or by any other person, milliner, dressmakers, clothier, shirt maker or clerk employed in stores or elsewhere, hand labor, including farm labor or any other kind of labor, printer, apprentice and all other tradesmen, hired for wages or salary from any person or persons, chartered company, joint stock company, limited partnership or other partnership, either as owner, lessee, contractor or under-owner, whether at so much per diem or otherwise, for any period not exceeding six months preceding the sale or transfer of the real or personal property, works, mines, manufactories or business, or other property connected therewith in carrying on the same, of said person or persons, chartered company, joint stock company, limited partnership or other partnership, by execution or otherwise, on account of the death or insolvency of such employer or employers, shall be a lien upon said real or personal property, mine, manufactory, business or other property in and about or used in carrying on said business or in connection therewith, to the extent of the interest of such employer or employers in said property, and shall be preferred and first paid out of the proceeds of the sale of such real and personal property, mines, manufactory, business or other property as aforesaid. The claim thus preferred not to exceed two hundred dollars."

In Pardee's Appeal, 100 Pa. 408, the same learned judge in delivering the opinion of the court, held that the act (1872), contemplates a business, complete and independent, of a fixed and permanent character, as opposed to a temporary employ-

ment that is merely incidental to any particular branch of business. That cutting saw logs, for the owners, and driving them to the place of manufacture, is not a business which comes within the act.

In Sanger v. Skinner, 16 W. N. C. 16, and Adamson's App., 110 Pa. 459, the Supreme Court held, that under the acts of 1872 and 1883, to entitle a wage claimant to preference in the distribution of the proceeds of an execution, the notice to the sheriff should show in writing: the process by which the goods are under execution; the amount claimed to be due as a preference, which must not exceed $200; that such amount is claimed as a lien on the property under execution; the character of the labor or service rendered, which must be within the terms or meaning of the acts; that such labor or service was performed in and about a business carried on by the execution debtor, which business must be within the scope of the acts.

In Wilson v. Gibson, 10 C. C. R. 191, it is said that farm laborers are entitled to a preference for wages under the act of 1872; but the employment must be continuous, not temporary, in its character. Hay packers and threshers, temporarily employed as contractors, are not within the act.

In Llewellyn's Appeal, 103 Pa. 458, it is held that labor and services which are entitled to priority of lien by virtue of the act of 1872 must be such, as in the course of a regular and permanent employment, contribute, directly or indirectly, to the particular, permanent and continuous use of "works, mines, manufactory or other business," and it is immaterial whether such labor is skilled or unskilled in the particular art or craft. That labor or services contributed to the construction and equipment of such works, mines, manufactory or other business, being only temporary and preliminary to their operation, are not within the purview of the act. That in order to start the manufacture of iron it is requisite, first, to construct the buildings, supply the machinery and equip the works; the labor bestowed upon the construction and equipment is merely temporary and preliminary in its character to the general employment for which the works are designed. That the construction of a manufactory is one thing, and the operation of it is another; the price of the materials furnished and labor done in the former is preferred, under the mechanic's lien law, whilst the wages of the labor

performed, in the latter, is covered by the provisions of the act of 1872. This is the judicial construction of the language of the act of 1872, as to the character of the business contemplated by the act, and the language of the act of 1872, on this point is re-enacted in the amendatory acts of 1883 and 1891; and it is held by the courts, that "when the legislature re-enacts language which has received judicial construction, it carries the same construction with it."

In Mulholland v. Brown & Co., 166 Pa. 486, it is held that a person employed by a firm, under a written agreement to sell goods for the firm, paying his own expenses and receiving road commissions, is a traveling salesman, and not a "clerk employed in a store or elsewhere," within the meaning of the act of 1891, giving a preference for wages. Because "such a person is not an assistant in the store or business of his employer. He is not employed to keep accounts, or to assist in the store or elsewhere in the management of the business."

The findings of fact by the learned auditor, as well as the decisions of the courts and their construction of the law, show clearly, that the claimant, Maurer, has not brought himself or his claim within any of the provisions of the act of April 9, 1872, or its amendments of June 13, 1883, and May 12, 1891, before mentioned, and is not, therefore, entitled to the protection which they are intended to, and do, afford to those who are shown to be within the range of their provisions.

We are, therefore, of opinion that the exceptions taken to the allowance of the claim of Casper Maurer, are well taken, and must be sustained and the claim disallowed by the court.

Exceptions sustained, the claim of Casper Maurer disallowed and the amount awarded to Maurer $90.00, is directed to be added to the sum of $147.11, awarded to Jacob Wolf, the execution creditor, and paid to him as execution creditor.

*Errors assigned* were (1, 2) sustaining exceptions; (3) in making the decree.

*B. F. Davis*, for appellant.

*J. Hay Brown*, with him *W. U. Hensel*, for appellee.

OPINION BY REEDER, J., February 16, 1897 :

The learned judge of the court below so thoroughly and so ably discusses the questions involved, that it is unnecessary for us to say anything in addition to the reasons which he gives in support of this judgment and decree.

The decree is therefore affirmed upon the opinion of the learned court below.