The James Rees & Sons Co., a Corporation, *v.* H. B. Hulings and E. J. Hulings, and H. B. & E. J. Hulings, partners, doing business as Hulings Bros. Appeal of George Nulton.

*Wages as preferred claims—Limitations as to business removed.*

Under the law as it now stands touching preferred claims for wages all limitations as to the business of the employer and places of employment are removed as to the twenty-five classes intended to be benefited.

*Wages—Preferred claims—Labor claimants and execution creditors.*

Execution creditors, whose writs have produced the fund, have no priority to wage claimants; the only liens which are preserved as a preference are those of mortgages or judgments entered before the labor is performed, and this exemption is provided by section 4 of the original Act of April 9, 1872, P. L. 47.

Argued May 13, 1898. Appeal, No. 205, April T., 1898, by George Nulton, labor claimant, from decree of C. P. Beaver Co., June Term, 1898, No. 2, affirming auditor's report. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Exceptions to auditor's report distributing proceeds of sheriff's sale. Before WILSON, P. J.

It appears from the record and the evidence that Hulings Bros., general contractors, made an assignment for the benefit of creditors, but before the execution of the deed of assignment various writs of execution had been issued under which property was sold which was used by the contractors in the erection and construction of a dam under a contract with the United States government, as well as used generally in their business

as contractors. This money, realized by the sale of this property having been made by the assignee, by agreement was paid into the hands of the sheriff for distribution. The fund was claimed by execution creditors and by various labor claimants. The auditor found that the labor claimants were not entitled to preference, and awarded the fund to the execution creditors. The report of the auditor was confirmed, and George Nulton, one of the labor claimants whose claim amounted to $52.85, appealed.

*Error assigned* among others was (1) in finding that George Nulton's claim for wages was not a preferred claim under the act of assembly passed April 9, 1872, P. L. 47, and its supplements.

*Dan H. Stone, Wilson & Holt, A. S. & W. S. Moore, Buchanan & McConnel, Edwin S. Weyand, W. M. Potter* and *Elmer Lyons* for appellant.—There is but one question in this case, and that is whether the appellant's labor claim is preferred to the claim of the execution creditors under the Act of April 9, 1872, P. L. 47, and its supplements.

Our position in brief is this, that under the act of 1891 all laborers, clerks and tradesmen, without distinction as to the character of the employer or the employment, are preferred, not that all persons who may work for wages or hire are preferred, but all laborers, clerks and tradesmen. It will be noticed that the act of 1891 omits certain words which are included in the act of 1883, and adds certain words which are not in the previous act. The defect of the act of 1883 was that it had extended the act of 1872 to include certain classes of wage earners, but did not extend the classes of employers to correspond thereto, and the act of 1872 had been so construed as not to include persons laboring for certain contractors or employers. What the evil was can be clearly seen by reference to the decision of the Supreme Court in Allen's Appeal, 81* Pa. 302. See also Gibbs & Sterrett's Appeal, 100 Pa. 528.

As a consequence extreme difficulty was found in interpreting this act until the Supreme Court in the case of Sproul v. Murray, 156 Pa. 293, held " that the class of employers is enlarged by necessary implication to correspond to the class of

employees named, and that the words 'other business' in the act include all kinds of business in which any of the classes of employees named in the act are engaged."

Then, as we contend, to get rid of all questions on that score and to extend the benefits of the act to the classes of employees named and all laborers, clerks or tradesmen, without distinction as to the character of the employers, the act of 1891 was passed.

No cases, involving owners engaged in the business of general contracting, have been passed upon by either the Supreme or Superior Courts, but a number of cases have been passed upon by the lower courts, and whenever passed upon, the courts have construed the business to be within the act of 1872 and its supplements: Strang v. Adams, 4 Dist. Rep. 212; Purefoy v. Brown, 2 Dist. Rep. 821.

*J. F. Reed*, with him *J. S. & E. G. Ferguson*, for appellees.—To entitle labor and services to a priority of lien under the act of 1872 or its supplements, the acts of 1883 and 1891, its character must be such as, in the course of a regular and permanent employment, contribute directly or indirectly to the particular, permanent and continuous use of the particular kinds of business contemplated by the act.

Construction of a plant is one thing; operation another. Only operative labor is entitled to preference: Maurer's Appeal, 3 Pa. Superior Ct. 601; Llewellyn's Appeal, 103 Pa. 458.

Hulings Bros. were not the owners of the dam, and as such engaged in operating it, nor was the labor for which preference is claimed performed in the operation thereof, but in the construction. The contractor mentioned in the act, to entitle his employees to preference, must be the operator of a business by contract, and the business must be one contemplated in the act.

In Ely v. Stanton, 120 Pa. 532, 536, Mr. Justice GREEN says: "We have repeatedly held that any person who claims the benefit of this act must bring himself clearly within the description of the persons who are entitled to its peculiar and special advantages."

That the act of 1891 does not name those laborers who work for a general contractor is also clear. That there is no such class necessary by implication is clear. We therefore contend that the appellee is not within the provisions of any act of as-

sembly relative to preference for wages of manual labor for the reason that he is not within the description of the persons entitled to wage preferences.

OPINION BY WILLIAM W. PORTER, J., January 18, 1899:

We have in this case to determine whether in the distribution of a fund raised by a sheriff's sale of personal property, the execution creditors or the labor claimants shall have priority.

Hulings Brothers were engaged for some fifteen years in a general contracting business, including the towing of barges, the laying of pipe lines and of water lines, the building of waterworks, dredging, steamboating and a general marine business. They failed in November, 1897. The fund upon which this controversy arises, was produced by a sale under executions levied upon their plant, consisting of steamboats, flatboats, dredge boat, engines, scows, etc. The parties agreed before the auditor that the money in the hands of the sheriff for distribution arose from the sale of the above and other property used by the Hulings Brothers in the erection and construction of dam No. 6, at Merrill, Pa., under their contract with the United States government; and " that they were used generally in their business as contractors." The auditor further finds, " It is conceded that the labor claims, as scheduled, are correct, and that the labor was performed for Hulings Brothers in and about the work by them to be performed under their contract with the government as to dam No. 6," etc.

On these facts, the court below approved the report of the auditor awarding the fund to the execution creditors. Prima facie, the execution creditors are first entitled (Gibbs & Sterrett's Appeal, 100 Pa. 528) ; but a preference is here claimed, based on the Act of April 9, 1872, P. L. 47, and its supplements, of which act it may be said at the outset, that any person, who claims its benefits, must bring himself clearly within the description of persons who are entitled to its peculiar and special advantages : Ely v. Stanton, 120 Pa. 532.

The act of April 9, 1872, is entitled an act " for the better protection of the wages of mechanics, miners, laborers and others." The first section designates the persons intended to be benefited by its provisions. This section has been amended

by enlargement by the Acts of June 13, 1883, P. L. 116, and of May 12, 1891, P. L. 54.

The act of April 9, 1872, gave the right of lien and priority in distribution to but four classes of employees, namely, miners, mechanics, laborers or clerks, who should be employed by certain employers, namely, owners, lessees, contractors or under owners of "any works, mines, manufactories or other business where clerks, miners or mechanics are employed." The classes of employees were thus specifically defined, not only by name, but limited also by the character of the business of the employer. It was thus construed by the Supreme Court, which held that wages of clerks or servants employed in a hotel do not come within the provisions of the act, and that the words "other business" refer to some business ejusdem generis, or works, mines, manufactories, where clerks, miners, mechanics or laborers are employed: Allen's Appeal, 81* Pa. 302; Sullivan's Appeal, 77 Pa. 107.

The amendment of June 13, 1883, largely increased the number of classes of persons who should enjoy the benefit of lien and priority, but unfortunately retained the language of the act of 1872, in respect to the character of the business of the employers.

The difficult task of interpreting this piece of legislation was accomplished by Mr. Justice MITCHELL in Sproul v. Murray, 156 Pa. 293, who reached the conclusion thus expressed: "Having thus, however, enlarged the class of employees, the act fails to enlarge the class of employers in express terms, and describes them in the same words as the previous act. But unless the class of employers is also enlarged, we not only defeat the plain general intent of the act, but are driven to the absurdity that servant girls in private families, milliners, seamstresses employed by merchant tailors, etc., are only entitled to preference for their wages when they are employed by the owners of works, mines or manufactories. To avoid this result we must hold that the class of employers is enlarged by necessary implication to correspond with the classes of employees named, and that the words ' other business ' in the act include all kinds of business in which any of the classes of employees named in the act are engaged."

To the amendment of 1883 was added the amendment of 1891,

which again increases the number of classes of employees to be preferred, but has the further effect of eliminating the character of the employer's business from the test when determining the right of any class of employees to the benefits of the act,— a result, however, which was already accomplished in effect by the interpretation placed on the act of 1883 by the Supreme Court in Sproul v. Murray, supra.

While the act of 1891 is not skilfully drawn, yet the legislative intent is discernible. The act of 1891 follows closely that of 1883. There are, however, substantial differences. Thus, not to make an extended comparison of the two acts, attention may be called to the fact that the words "any works, mines, manufactories or other business where clerks, miners or mechanics are employed," contained in the act of 1883, are omitted from the act of 1891 in the connection in which they were found by the Supreme Court to embarrass the interpretation of the act. Furthermore, the words "real or personal property" are inserted in the act of 1891 in connection with the words sale or transfer of "works, mines," etc., as used in the act of 1883. The right of lien is by the act of 1891 upon "real or personal property," as well as upon "mines, manufactories," etc., and the same words are used in respect to the proceeds of the sale. The act is thus a general act, and gives right of lien and priority in distribution to all the classes of employees named in it, without restriction based upon the character of the business of the employer. To this conclusion, we are aided by the views expressed by Mr. Justice FELL, in Mulholland v. Wood, 166 Pa. 486. In that case, while holding that a traveling salesman is not a "clerk" within the contemplation of the act, he says: "The act of May 12, 1891, is an amendment of the act of June 13, 1883, which was an amendment of the act of April 9, 1872. Each successive act enlarges the number of persons intended to be benefited. The first act included but four classes, the second twenty-three, and the third twenty-five. Each act included clerks, and in the third all limitations as to the business of the employer and places of employment are removed as to them." If these limitations are swept away as to clerks, the same must be said of all classes of employees enumerated in the amended act.

The lien, as given by the act of 1891, is for moneys due for

labor and services " for any period not exceeding six months preceding the sale or transfer of the real or personal property, works, mines, manufactories or other business, or other property connected therewith in carrying on the same, of said person," etc. ; and again it shall be " a lien upon said real or personal property, mines, manufactories, other business or other property in and about, or used in- carrying on said business, or in connection therewith," etc.

The property, subject to the lien, must be used in connection with or in carrying on the business or purpose to which the property is devoted: Gibbs & Sterrett's Appeal, 100 Pa. 528. Whether the work for which wages are claimed was done in the prosecution of some business or continuing purpose or enterprise, is an important test of the right to lien and preference. Labor or services rendered in original equipment or construction are not within the provision of the act: Maurer's Appeal, 3 Pa. Superior Ct. 601; Llewellyn's Appeal, 103 Pa. 458. This is an important distinction. It still obtains. In the present case, however, it does not deprive the labor claimants of their right, inasmuch as the Hulings Brothers were using the property sold " generally in their business as contractors," and the work, for which lien for wages is asserted, was performed in connection with their general business.

Having ascertained that the employees claiming the fund now in court, are such as are entitled to the benefits of priority, it remains only to determine whether the right rises higher than that of the execution creditors, whose writs have produced the fund. The amendment of 1891 clearly contemplates such a priority, in that it treats of the sale of property sold " by execution or otherwise," and explicitly provides that the claims for wages for labor " shall be preferred and first paid out of the proceeds of the sale of such real and personal property."

The only lien, which is preserved as a preference, is that of mortgages or judgments entered before the labor is performed. This is done by section 4 of the original act of 1872.

The assignments of error must, therefore, be sustained. The decree is reversed and the record remitted that distribution may be made in accordance with the views herein expressed.