138, (1918).]    Arguments—Opinion of the Court.

*A. E. Jones,* with him *F. C. Newcomer* and *Cooper Lackey,* for appellants.—The letter merely created an agency: Jones v. Keesey, 42 Pa. Superior Ct. 490; Beans v. Bullitt, 57 Pa. 221; Burger v. Burger, 135 Pa. 499; Balliet v. Brown, 103 Pa. 546.

*Lee Smith,* of *Brownfield & Goodstein,* for appellee: Burke's Est., 1 Parsons 470.

PER CURIAM, July 10, 1918:

The only assignment of error presented is, that the court erred in its conclusion of law, holding, that a letter of attorney in connection with the agreements is an assignment in trust for the benefit of creditors, and this is fully and convincingly answered in the opinion filed by the court below, directing that the motion for judgment against the garnishee be overruled and dismissed.

The judgment is affirmed.

---

## Gillespie *v.* Murphy, Appellant (No. 1).

*Mines and mining—Lien for wages—Principal and agent—Acts of April 9, 1872, P. L. 47, and May 12, 1891, P. L. 54.*

The real owner of a coal mine cannot defend against a lien for wages filed against the property under the Acts of April 9, 1872, P. L. 47, and May 12, 1891, P. L. 54, where it appears that the claimant was employed to work in the mine by a person to whom the owner had transferred possession of it under an agreement by which he leased the equipment to such person, but not the coal, and under the terms of which agreement the person given possession was in fact the agent of employee of the owner, and not his lessee.

Argued April 15, 1918. Appeal, No. 61, April T., 1918, by defendant, from judgment of C. P. Washington Co., May T., 1917, No. 206, for plaintiff on rule to strike off lien in case of Charles Gillespie v. Owen Murphy. Be-

fore Orlady, P. J., Porter, Henderson, Head, Kephart, Trexler and Williams, JJ.  Affirmed.

Rule to strike off lien.

From the record it appeared that claimant worked in a coal mine owned by Owen Murphy, but in the possession of M. S. Ramsey under the following agreement:

"This agreement or contract entered into, by and between Owen Myrphy or Owen Murphy, and the Washington Coal & Coke Co., known hereafter as party of the first part, and M. R. Ramsey, known hereafter as the party of the second part.

"1st. The party of the first part does hereby lease unto the party of the second part, the Shaft, boilers, engines, mules, dwelling house, and all other equipment pertaining to the mining of coal under or on said tract of land known as the Ryan or Cain tract located at or near Coon Island, Washington County, Pa.

"2d. The party of the second part does hereby agree for the consideration hereinafter named to mine the coal as per projection made by M. R. Ramsey the mining of said coal is known as development of mine work.

"3d. The party of the first part does hereby agree to give to, sell to the party of the second part the coal mined for the consideration of one dollar, (the receipt of which is hereby acknowledged) and extracting the coal on said property as per projection heretofore mentioned.

"4th. This agreement or instrument to be in force for the period of 6 (six) months, beginning upon date below.

"5th. The party of the second part retains the right or privilege of making void this agreement or contract at any time within the aforesaid period of time.

"6th. The party of the second part does hereby agree to build Tipple, Engine House, Power House, Boiler House and Foundation as for same, if desired by party of the first part, by force account plus 10 per cent., payment of said force account, and responsibility to be assumed by the party of the first part.

143, (1918).] Statement of Facts—Opinion of Court below.

"7th. The party of the first part is to pay the cost of pumping or extracting the water from the mine or shaft, replace hoisting rope readjusting R. R. tracks, completing air way down to bottom of shaft and the party of the second part is hereby authorized to start the above named work.

"8th. The party of the second part is to be paid for work such as making sump, extracting or removing material from the roof, placing pumps into permanent positions, and any other inside work by receiving 10% of the actual cost for doing such work, and such work to be paid by the party of the first part.

"9th. The party of the second part hereby agrees to make map of property plan of tipple, plan of shaft bottom, plan of power, and boiler houses, and mine projection for the consideration of this contract.

"September 25, 1916.

"Party of the first part.

"(Signed) OWEN MURPHY

"Party of the second part.

"(Signed) M. R. RAMSEY.

"This instrument signed in duplicate by both parties, each party retaining one each."

On a rule to strike off the lien McILVAINE, P. J., filed an opinion the material portions of which are as follows:

The contract is certainly inartistically drawn and is difficult to interpret, but there are several provisions in it, as we interpret it, to justify the conclusion that Ramsey was not a lessee of Owen Murphy's mine, to run it on his own account, but he was rather Owen Murphy's manager or superintendent to operate and develop the mine as Murphy's employee.

It will be noticed that the first paragraph of the agreement does not lease the mine to Ramsey. What it does do is to lease to or give him the right to use the shaft, boilers, engines, mules, dwelling house and all other

equipment pertaining to the mining of coal under or on said tract of land known as the Ryan or Cain tract located at or near Coon Island. In other words, there is no consideration expressed in the agreement that Ramsey was to pay for the use of the shaft, boilers, engines, mules, dwelling house and other equipment as lessee. They were simply turned over to him, presumably as Murphy's manager, for the period of six months, if he saw fit to stay in Murphy's employ that long.

The second paragraph simply provides that Ramsey agrees to mine the coal as per projection made by him, the mining of said coal to be known as development of mine work. This is nothing more than an agreement that Ramsey is to mine coal in Owen Murphy's coal mine, and while he was mining it the presumption being that he was mining it for Murphy.

The next paragraph confirms this, for it provides that the coal when mined will be sold by Murphy, clearly implying that it was then his coal, for the sum of one dollar, provided Ramsey had extracted the coal for Murphy on said property as per projection therein mentioned.

When we come to the sixth paragraph we find that certain other things are to be done by Ramsey, evidently as the employee or manager of Murphy; that is, he is to build tipple, engine house, power house, boiler house and foundation for the same, if desired by the party of the first part, by force account plus 10 per cent., payment of said force account and responsibility to be assumed by Murphy, the party of the first part, there clearly showing that Ramsey was to be his manager or superintendent, and that the necessary labor to do the work was to be paid for by Murphy.

Then coming to the seventh paragraph, we find it expressly provided that Murphy "is to pay the cost of pumping or extracting the water from the mine or shaft, replace hoisting rope, readjusting railroad tracks, completing air way down to bottom of shaft, and the party of the second part is hereby authorized to start the above

named work," clearly showing an authority given by an employer to his employee.

The eighth paragraph says that "the party of the second part is to be paid for work such as making sump, extracting or removing material from the roof, placing pumps into permanent positions, and any other inside work, by receiving 10% of the actual cost of doing such work, and such work to be paid by the party of the first part"; that is, the men that were employed to do this work were to be paid by Murphy.

Taking the whole contract, it is to our mind clearly not a lease of Murphy's mine to Ramsey to be operated by him, he thus being an independent contractor or lessee, whose employees would clearly have no right to enter a lien against the mine but only against such interest as Ramsey might have, but clearly this agreement was a contract of employment by which Ramsey became the manager or superintendent of Murphy's mine, with authority to operate it and to employ for Murphy the miners that might be necessary to do the required work.

We are therefore of the opinion that the written agreement when properly interpreted does not sustain the construction that Murphy has put on it in his affidavit of defense, or the conclusion that Ramsey under that written agreement was a lessee of this mine such as would require the miners employed by him to file their liens against the property of Ramsey. And this being the case, his affidavit of defense is clearly insufficient to prevent judgment, the proper construction of the lease being that Ramsey was his manager or superintendent, with authority to employ miners to carry on Murphy's mine, and therefore his property or his mine is the object of the lien which the law creates in favor of those who worked for him through Ramsey in carrying on the business of that mine.

We are therefore of the opinion:

1. That the plaintiff's lien on its face is good and cannot be stricken from the record.

2. That the writ of scire facias was properly issued and cannot be quashed.

3. That the written contract—"Exhibit A"—attached to the amended answer of the defendant, is not a lease of Murphy's mine, but a contract that Ramsey was to act as Murphy's manager to hire miners for him and to carry on the business of operating his mine along the lines therein specified.

4. That the plaintiff is entitled to judgment.

*Error assigned* was the judgment of the court.

*Harry F. Moore,* with him *R. W. Knox* and *McIlvaine, Williams & McCreight,* for appellant.—It is true that the use of the word lease is not conclusive that the agreement was a lease, but it does show what the parties had in mind when the agreement was made, and must be considered as one of the elements which go to make up a lease. It has been held that "any language by which the possession is transferred for a limited time, for the stipulated return, creates a tenancy and is in fact a lease": Pickering v. O'Brien, 23 Pa. Superior Ct. 125.

*J. Boyd Crumrine,* with him *Acheson & Crumrine* and *C. L. V. Acheson,* for appellee.

PER CURIAM, July 10, 1918:

For the reasons given by Judge MCILVAINE in overruling the motion for a reargument and sustaining the judgment theretofore entered, the judgment entered in this case is affirmed.

---

## Gillespie *v.* Murphy, Appellant (No. 2).

This case involved the same question as Gillespie v. Murphy, Appellant, supra.

PER CURIAM, July 10, 1918:

The judgment in this case is affirmed for the reasons given in the opinion in the court below.