## Gamble, Trustee, v. Clift Coal Company et al.

R. S. Hemingway and C. W. Dickson, for motion and rule.

R. Lawrence Coughlin, for plaintiffs.

EVANS, P. J., November 16, 1931.—This matter comes before the court on petition, answer and testimony taken before the court. Wage lien claimants seek to set aside a sheriff's sale. On April 14, 1928, the plaintiff entered judgment against the defendants on a judgment note dated April 9, 1928, at one day, for debt and attorney's commission of $351,750. The defendants' real estate was levied on and sold by the sheriff on a pluries writ of fi. fa. on said judgment April 11, 1931, to the plaintiff, Frank A. Gamble, trustee, at the courthouse in the town of Bloomsburg, this county, for the sum of $56.65, and the proceeds applied to the payment of the costs. The land sold is described in the sheriff's sale bills as follows:

"All the interest of the Clift Coal Company in and to all that piece or parcel of land in the Township of Beaver, County of Columbia, known as the Catherine Longenberger tract, containing 364 acres, be the same more or less. Surveyed on the 8th day of July, 1794, by virtue of a warrant dated the 23rd day of August, 1793, and recorded in the Department of Internal Affairs of the State of Pennsylvania in Book M, page 59 of surveys, and more particularly bounded and described therein. Being the same land or part of the same land now owned by the Clift Coal Company and others."

May 15, 1931, before confirmation absolute of the sheriff's sale was made, exceptions to the confirmation of the same were filed by John Hons, Claude Longenberger, John Ball, Joseph Fogel and others, wage lien claimants against the defendant, the Clift Coal Company. The same day four of these wage lien claimants petitioned the court to set aside the sale, whereupon the rule now for determination was granted.

From the petition, answer and testimony, we find the following facts:

1. The wage lien claimants who have petitioned to set aside the sheriff's sale, together with the amounts of their respective claims, are: John Hons, $207.70; Claude Longenberger, $174.81; John Ball, $86.85; Joseph Fogel, $119.73.

2. The improvements on the land were not mentioned in the sheriff's sale bills.

3. The execution plaintiff's attorney was asked before the sale to state to the bidders present what interest of the execution defendant was to be sold, and whether the interest to be sold was a fee simple or leasehold. At first he replied he did not know, but later, before the sale, stated "voluntarily and merely as matter of courtesy to someone who had asked the question," he believed the interest to be sold was a 27/54ths fee simple interest.

4. The execution plaintiff's attorney announced before the sale that the property would be sold subject to the liens or claims for unpaid taxes due the Commonwealth of Pennsylvania, but that he did not know the exact amount of said taxes; that the aggregate might be as much as $16,000 or $18,000; that all the claims for taxes due the Commonwealth had not been filed with the sheriff.

5. The execution plaintiff's attorney, when asked by prospective bidders before the sale whether there were any improvements on the property, stated that he did not know, but that he thought there was a coal-breaker on the premises.

The plaintiff's answer admits most of the allegations of the petition to set aside the sale, but challenges and denies that these wage lien claimants have any standing or right to object to the confirmation of the sheriff's sale; that they were not employes of the Clift Coal Company, but were employes of another company, namely, the Nay Butt Coal Company.

On their face, the wage lien claims of the petitioners are regular in form, and state in each instance that the claim is for wages for labor and services as a miner and mine laborer performed by the claimant for the defendant, the Clift Coal Company, in and about the business of mining coal in Beaver Township, this county, and performed within six months immediately preceding the date fixed for the sheriff's sale of the defendant's real estate, and that the claims were filed in the prothonotary's office within three months from the date when the wages became due and payable.

Section one of the Act of May 12, 1891, P. L. 54, amending section one of the Act of April 9, 1872, P. L. 47, provides that a lien may be had on a claim for wages, and specifically provides for the wages of a miner. The latter part of the section provides that such claim, in order to be a lien upon any real estate, must be filed in the prothonotary's office of the county in which such real estate is situated within three months after the same becomes due and owing, in the same

244

manner as mechanics' liens are now filed. These wage claims were valid liens against the defendant's property at the time of the sale.

In First National Bank of Mahanoy City et al. *v.* Sheafer et al., Exec'rs, 149 Pa. 236, 238, the court said:

"In construing the Act of 1872, relating to the lien of labor claims, this court held that the lien attaches at the date of, and because of the sale or transfer, whether by execution or otherwise, and extends only to the specific works, mines, etc., in which the labor claimant was employed, and to such other property of the employer as is used in carrying on said business or in connection therewith: Hartman's Appeal, 107 Pa. 327. Within certain restrictions and limitations, the claim for wages is made a lien on the fund produced by the sale, and is thus preferred in the distribution thereof. It attaches immediately upon the sale and not before, and, as a preferred lien upon the proceeds, is payable out of the same. There cannot, of course, be any preferred claim or lien unless there is a sale. When the contingency happens upon which it depends, the lien for wages springs into existence. The sale imparts to that class of claims the peculiar quality of a preferred lien on the proceeds."

To the same effect are the following cases: Rees & Sons Co. *v.* Hulings et al., 9 Pa. Superior Ct. 265; Allentown Nat. Bank *v.* Helios Dry Color and Chemical Co., 9 Pa. Superior Ct. 275.

The contention on the part of the plaintiff that these wage lien claimants were not employes of the Clift Coal Company cannot avail the plaintiff in this proceeding. If the plaintiff chooses to attack these wage lien claims, the attack should be made directly against the claims themselves and not in this collateral proceeding: Gillespie *v.* Murphy (No. 1), 70 Pa. Superior Ct. 143.

Statutory liens, judgments and mortgages are never treated as a nullity in the first instance, and if a party in interest chooses to question their validity, he must do so by directly attacking them in the proceeding to which they are entered: Myers et al. *v.* Crick, 271 Pa. 399, 403.

In Delaware County National Bank *v.* Miller, 303 Pa. 1, it is held that, while mere inadequacy of price is not, standing alone, sufficient to justify the setting aside of a sheriff's sale of real estate, if the inadequacy is gross and other reasons appear, the courts may properly grant such relief; and that sheriff's sales must be conducted with the utmost good faith and, unless the proper information is given to prospective purchasers at the sale, the sale will be set aside.

In the instant case: (a) The property was inadequately described in the sheriff's sale bills; (b) the improvements on the property were not listed or mentioned; (c) the property, the Catherine Longenberger tract containing 364 acres, improved with a coal-breaker, was sold to the plaintiff in the writ for the inadequate price of $56.65; (d) immediately before the sale the execution plaintiff's attorney announced to the prospective bidders that the property would be sold subject to liens or claims for unpaid taxes due the Commonwealth; that he did not know the exact amount; that all of the claims had not been filed with the sheriff, and that the aggregate amount of the taxes due the Commonwealth might be as much as sixteen to eighteen thousand dollars.

Prospective bidders had no opportunity to verify the accuracy of the announcement made by the execution plaintiff's attorney with respect to the unpaid taxes due the Commonwealth, and none were imbued with sufficient gambling spirit to run the risk of bidding on the property. The sale should, therefore, be set aside.

And now, November 16, 1931, for the reasons above given, the exceptions are sustained, the rule is made absolute, and the sheriff's sale is set aside.