## Pardee's Appeal.

1. The form of notice to be given by the claimants under the Wages Act of April 9th 1872 (P. L. 47), to the officer executing the writ, is immaterial; but it should be sufficiently full and clear to show the officer and others interested, that the labor was performed within the time limited by the Act, and in a business defined therein; the sum due, and that the property subject to the lien is embraced in the levy.

Allison *v.* Johnson, 11 Norris 314, followed.

2. The Act contemplates a business, complete and independent, of a fixed and permanent character, as opposed to a temporary employment that is merely incidental to any particular branch of business. Cutting saw logs, for the owners, and driving them to the place of manufacture, is not a business which comes within the Act.

3. Where the enterprise in which the laborers—claimants under the said Act—had been engaged, was concluded, and the property connected with it removed, in good faith, by the owner, from the place where the labor was performed, *Held,* that the laborers' claims could not be sustained as against an execution creditor of the owner.

April 25th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Clinton county :* Of January term 1882, No. 370.

Appeal by Ario Pardee, from a decree of the said court dismissing his exceptions to the report of an auditor appointed to distribute the proceeds of a sheriff's sale of the personal property of James Colbert, and making distribution of the same.

Before the auditor, George A. Brown, Esq., the following facts appeared : During the winter of 1880–81, James Colbert was employed by Pardee & Cook, who were manufacturers of lumber, to cut logs on their land and run them into the Lock Haven and Williamsport booms. The work was carried on until about April 1st 1881, when it ceased, and Colbert removed his personal property, which he had used in the work, from the woods to his farm about ten miles distance in the same county, and discharged his men. Colbert had meantime become indebted to Pardee & Cook, who entered judgment against him, and on April 11th 1881, Pardee as surviving member of the firm, issued execution on the judgment, under which the sheriff levied upon and sold the property above mentioned, together with other personal property of Colbert at his farm, thereby producing the fund for distribution.

Robert Patrequinn and a number of other laborers, who had been employed by Colbert in his work for Pardee & Cook, and who had not been paid, presented written notices to the sheriff under sections 1 and 2 of the Act of April 9th 1872 (P. L. 47), and demanded to be first paid out of the proceeds of the sale.

[Pardee's Appeal.]

Patrequinn's notice was in the following words, and the others were substantially similar : ·

ARIO PARDEE, surviving Part-    In Common Pleas of Clin-
       ner, &c.,                  ton county.
         v.                    No. 111, May Term, 1881.
JAMES COLBERT.

To R. S. Barker, Esq., Sheriff :

You are hereby notified that I claim to be due me for labor and services from the above named defendant, the sum of eighty-eight and 14-100 dollars for said labor and service, being manual labor, at twenty-six dollars per month, and for driving logs at two and 50-100 dollars per day, and rendered within six months last past, at and about the log job at or near which the property you now have levied upon and advertised under the above stated writ was found and at and about which it was used for carrying on the lumber business ; which sum you will be required to pay me as a preferred claim out of the proceeds of the sale of defendant's said property.

April 27th 1881.                          R. PATREQUINN.

The auditor, after finding as a fact that the fund realized by the sheriff's sale, exclusive of that derived from Colbert's farm property, was sufficient to pay the laborers, allowed the claims of nineteen of them, and awarded the fund first to the payment of their demands.

Pardee excepted to this distribution on the following grounds :

(1.) The Auditor erred in ruling that the notices of claims for wages of labor were sufficient and that they set forth with proper particularity the different facts required by the Acts of Assembly.

(2.) The Auditor erred in ruling that the business carried on by defendant was such a business or operation as is contemplated by the Act of Assembly.

(3.) The Auditor erred in ruling that the removal of the property from the place where the work was done, a distance of ten miles, and the ceasing of work at said place, and the departure of the laborers without any arrangement to return, did not affect the rights of the claimants.

The court below, MEYER, P. J., delivering the opinion, sustained the first exception, as to all but Patrequinn and three other laborers, and dismissed the second and third, making a decree accordingly.

Pardee thereupon took this appeal, assigning for error the decree of the court in dismissing his exceptions as above quoted,

[Pardee's Appeal.]

and in awarding any of the fund to Patrequinn and the other laborers.

*I. C. Hipple*, for the appellant.—Colbert's business was not within the Act of 1872.

Manifestly the Legislature in passing the said act contemplated such business as was established, certain and definite in its character; works, mines, manufactories and businesses complete, it may be said, in themselves.

The manufacturers in this case were Pardee and Cook; Colbert's operation was simply one of several similar methods, which they employed to obtain logs. If Pardee & Cook's property had been levied on, the laborers' claims might have been allowed: Wentroth's Appeal, 1 Norris 469 ; Dewees *v.* Letchford, 10 W. N. C. 61. But Colbert was neither an owner, contractor, lessee, or under owner within the Act. If the Act of April 9th 1872, was intended to cover and embrace such claims and business why was it necessary for the legislature in 1879 (Pamphlet Laws 176) to pass an act " to enable laborers to secure and collect their pay for work done in and about the stocking of saw logs," which act expressly mentions " the work done in and about the cutting, peeling, skidding, hauling and driving of saw logs."

Before the fi. fa. issued all the property sold by the sheriff was separated, removed and taken away from Colbert's works or business, if such existed as was meant by the Act of 1872, and was not connected therewith or any longer a part thereof.

The notices should be sufficiently clear to enable a sheriff to distribute the fund, if no distribution were asked at the hands of the court. They were generally defective : Allison *v.* Johnson, 11 Norris 314 ; Peiffers Estate, 6 Luz. Leg. Reg. 101.

*C. S. McCormick*, for appellee.—It is objected that the notices do not set out the business of Colbert, or the kind of labor. But the sheriff had levied on and advertised for sale horses, sleds, cant hooks, sliding camps, &c., belonging to the defendant, which fact, connected with the statement in the notices that the claims were for labor done in and about the works, manufactories or business of the defendant, to be paid out of the property now advertised for sale, made the notices sufficient as to the nature of the business. Under the decisions in Pennsylvania the word labor, which is used in the notices, is sufficiently specific. It is unnecessary to say manual labor : Seider's Appeal, 10 Wr. 61 ; Penn. & Del. R. R. Co. *v.* Luffer, 4 W. N. C. 77 ; Wentroth's Appeal, 1 Norris 471. The claimants in this case clearly come within the provisions of the act, which includes miners, mechanics, laborers or clerks

[Pardee's Appeal.]

who have rendered services to a person or company who employs such persons, and who claim to have money due them for services rendered within six months preceding the sale of their employers' property.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The fund for distribution in this case was raised by the sale of personal property, consisting of horses, cattle, sheep, farming utensils, feed, etc., on an execution issued by appellant.  Colbert, the defendant in the execution, had been employed by appellant and his partner, who were manufacturers of lumber, to cut saw-logs on their land and run them into the Lock Haven and Williamsport booms.  The appellee and others were hired by him to assist in cutting and driving the logs.  After finishing his winter's work, Colbert discharged his employees and removed his teams and other personal property, used in the prosecution of the business, from the camp in the woods to his farm at Round Island, about ten miles distant.  This was done in the ordinary course of the business and in the utmost good faith.  While thus on the farm, the property was levied on and sold by the sheriff, and out of the proceeds appellee and other employees of Colbert claimed balances due them for the work in which they had been engaged.  Nineteen of the claims were allowed by the auditor, but the court excluded all except that of the appellee and three others, on the ground that they had not given such notice as is required by the Act of April 9th 1872, on which their respective claims were based.

The contention of appellant is that none of the claims should have been sustained, because:

1st. The notices of claim were defective and insufficient.

2nd. The business in and about which the labor was performed was not such as is contemplated by the Act.

3rd. The work of cutting timber in which claimants were employed had ceased and the property, represented by the fund for distribution, had been regularly and in good faith removed from the place where the labor was performed to a farm ten miles distant, and was subsequently levied on there and sold by the sheriff.

As to the first point, it has been held that the notice should set forth such facts as to bring the claim within the Act, so that the officer and others interested may know that the labor was performed within the time limited by the Act, and in a business defined therein, the sum due, and that the property subject to the lien is embraced in the levy.  It is immaterial in what form these things are set out, but it is essential that they appear: Allison v. Johnson, 11 Norris 314.

While the notice in this case is not very clear and specific either in regard to the kind of business in which the labor was performed or the place where it was done, it might perhaps be considered sufficient, if in other respects appellants' claim were well founded.

The second point is well taken. We are clearly of opinion that the business of cutting saw-logs and driving them to the place of manufacture is not such as is contemplated by the Act of 1872. Its declared purpose is to secure money due, "for labor and services rendered by any miner, mechanic, laborer or clerk, from any person or persons, or chartered company, employing clerks, miners, mechanics or laborers, either as owners, lessees, contractors or under-owners of any works, mines, manufactory or other business where clerks, miners or mechanics are employed." The words, "works, mines, manufactory," thus employed in the Act, have a definite signification, well understood in their general and popular acceptation. Ex vi termini the branches of business intended to be described by them are, in a certain sense, complete and independent, and of a fixed and permanent character, as opposed to a temporary employment that is merely incidental to any particular branch of business. It will scarcely be pretended that either of these words fitly describes the business in which appellant was employed. It is contended however that the expression, "other business," etc., is sufficiently comprehensive to embrace cutting and driving logs. Perhaps it would, if we were at liberty to construe it without reference to the context; but the preceding words, designating particular branches of business with which the idea of permanency and completeness, in a certain sense, is always associated, must control the meaning of the more general expression used in immediate connection therewith. The "other business" is ejusdem generis with that more particularly described by the preceding words of the context, business of the same general character, not embracing every species of employment in which the services of others may be rendered.

This construction of the Act under consideration also harmonizes with subsequent legislation on the subject of labor claims. The Act of June 12th 1879, P. L. 176, entitled, "An Act to enable laborers to secure and collect their pay for work done in and about the stocking of saw logs," gives them a preferred lien on the logs for work done in and about the cutting, peeling, skidding, hauling and driving of saw-logs" for a period not exceeding six months, prior to the death of the employer, or to his assignment for the benefit of creditors, or to sale of the logs on execution process against said employer. If the Act of 1872 bears the construction contended for by the appellee, the Act of 1879 was clearly a work of supercrogation.

It is unnecessary to discuss the third point. Under the circumstances of this case it is also well taken.

Decree reversed at the costs of the appellee, R. Patrequinn; and it is now adjudged and decreed that the sum of eighty-three 14-100 dollars erroneously appropriated to the payment of his claim, be paid to appellant.