## Commonwealth *v.* Bowser, Appellant, (No. 1).

*Criminal law—Protection of female children—Acts of June 11, 1879, P. L. 142, and May 28, 1885, P. L. 27.*

The provisions of the Act of June 11, 1879, P. L. 142, entitled "An Act to protect children from neglect and cruelty and relating to their employment, protection and adoption," are radically enlarged by the supplementary Act of May 28, 1885, P. L. 27.

On the trial of an indictment for enticing a female child under sixteen years of age for purposes of prostitution "into, about or in the immediate vicinity of the sheds, buildings and structures of the Independent Refinery, and upon or near the right of way of the Pennsylvania Railroad Company" in violation of the Act of May 28, 1885, P. L. 27, which makes it a misdemeanor to entice such a child for such a purpose "into a house of ill-fame, or of assignation, or elsewhere," the trial judge commits no error in his charge in construing the word "elsewhere" as meaning any place convenient for such a purpose.

The word is to be interpreted in its plain and dictionary sense—in another place, or in other places, somewhere or anywhere else,—than in a house of ill-fame or assignation.

On the trial of such an indictment, it is not material to investigate the reputation of the child for chastity.

Argued April 12, 1915. Appeals, Nos. 156, 157 and 158, April T., 1915, by defendant, from judgment of Q. S. Venango Co., Jan. T., 1915, Nos. 22, 23 and 24, on verdict of guilty in case of Commonwealth v. Harry Bowser. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Indictment for violation of the Act of May 28, 1885, P. L. 27. Before CRISWELL, P. J.

From the record it appeared that one of the indictments charged that the defendant did "then and there unlawfully, wilfully and maliciously take......she being then and there a female child under the age of sixteen years, into, about or near to the sheds, buildings and structures of the Independent Refining Company

and along or near to the right of way of the Pennsylvania Railroad Company, then and there being and situate, and elsewhere within the said County of Venango and State of Pennsylvania, for the purpose, then and there, of sexual intercourse and prostitution contrary to the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

The other two indictments contained similar averments as to two other children.

The court charged in part as follows:

The indictment in each of the cases on trial contains two counts. They are prepared under the first section of the Act of 1885 which provides: "That any person who takes a female child under the age of sixteen years for the purpose of prostitution or sexual intercourse, or, without the consent of her father, mother, guardian or other person having legal custody of her person, for the purpose of marriage, or who enveigles or entices any such minor female child into a house of ill-fame, or of assignation, or elsewhere, for the purpose of prostitution or sexual intercourse, shall, in every such case, be guilty of a misdemeanor." Prior to the passage of this act there were penalties provided by law for persons who committed fornication, adultery or rape or attempted so to do—made the attempt but failed; but there was no penalty provided for a person who took females for prostitution or enticed them to go to such places such as this act provides. This act is directed against the male person and not against the female. It is a supplement to an act for the protection of children. It applies only to efforts made to induce female children under the age of sixteen years to engage in such business or to go to such places.

The first count in each of the indictments charges the taking of these girls for the purpose of prostitution or sexual intercourse. The second count charges the enticing of the children to a place for the purpose of prostitu-

tion or sexual intercourse. You may notice the differ-
ence. One relates to the taking of the children for the
purpose of prostitution or sexual intercourse; the other
relates to enticing the children to go to such place for the
purpose of prostitution or sexual intercourse. The word
"take" as used in this connection is quite a compre-
hensive word. "Take" has a great many different shades
of meaning. You may take a struggling athlete against
all his resistance to a jail or lockup; and you can take a
child to school or take her on a walk, which indicates two
different shades of meaning of the term. The sense in
which it is used here includes the milder as well as the
stronger sense to which I have referred. It might include
the taking of a child by physical force, or it might in-
clude the taking of a child with her consent or under the
influence of promises or persuasion on the part of the
person taking her. It is more comprehensive than the
word "incite" because it implies the physical presence
of the person taking her. A person may be incited to
go to such a house and the person who incites her might
not go with her. By various means she may be per-
suaded to go—incited to go. In such case the latter pro-
vision would apply rather than the former. Prosecu-
tions under this section have not been numerous; in
fact I recall no case in this court. The terms of the
statute, however, appear quite clear.

You will have noted from what I have already said,
the statute being directed against the male and not
against the female, that frequently it is not a matter of
importance whether the female is willing at the outset to
go or not. There may be a taking against the will of the
person taken, or there may be a taking with her consent.
When a person is incited to do a certain thing that fact
includes the assumption that she goes willingly, under
the influence, however, of the incitement. Whether or not
the female child has the innocence of childhood or
whether she be already treading the downward path the
statute is provided for her protection. If she be already

on the downward way she would probably yield much more quickly and easily to persuasion and incitement than if she had never entered upon that way. But the act relates not to the character of the child but to the acts of the male, and the question which you have to determine is whether or not the defendant took these children as they were, or incited them as they were to the place where he is alleged to have taken them or to which it is alleged they went.

By Mr. McCracken, District Attorney: Your honor has been using the word "incite" and the word used in the act of assembly is "entice."

The Court: Where I have been using the word "incite" I should have been using the word "entice." (The first sentence of the act provides: "That any person who takes a female child under the age of sixteen years for the purpose of prostitution": it does not say where he takes her for the purpose of prostitution or sexual intercourse. Later it provides that one "who enveigles or entices any such minor female child into a house of ill-fame, or of assignation, or elsewhere, for the purpose of prostitution or sexual intercourse, shall, in every such case, be guilty of a misdemeanor." If he takes her for the purpose of prostitution or sexual intercourse he is guilty under this statute. [If he entices her to go to a house of prostitution or assignation or elsewhere for the purpose of sexual intercourse he is guilty. There is no particular plan of a house used for the purpose of prostitution or assignation; any house may be used for such a purpose. Any place may be used for such a purpose providing it is a convenient place for such a purpose. So the one who incites a child to go to a house of prostitution or assignation or elsewhere for the purpose of sexual intercourse is guilty under this statute, whether the "elsewhere" be back of a wax-house, on a sidehill, in the woods or any place that is convenient for that purpose, and such a place as persons desiring to commit that offense would naturally resort to.]   (5) The indictments, as we have

stated, contain two counts; and, as we have already in-
dicated, the word "taking" is more comprehensive than
the word "inciting"; although ordinarily in every case
of taking there is inciting also. A person may be incited
by a promise of money or persuaded in any way and after
being so acted upon they may be taken, and the inciting
merges into the taking. Where there is only an inciting,
however, with no taking the second count in the indict-
ment only applies.

Verdict of guilty upon which judgment of sentence was
passed.

*Error assigned,* amongst others, was (5) instructions
as above, and in excluding evidence to the child's chas-
tity.

*Edmond C. Breene,* with him *William J. Breene,* for
appellant.—It is significant of the legislative intent, that
no restriction was made as to the place or places to or
into which the female should be "taken" for such un-
lawful purpose; and it is likewise apparent that had
they intended to make it a crime to "entice or enveigle"
such child any place for such unlawful purpose, they
would not have inserted the words "into a house of ill-
fame, or assignation." It is not to be presumed that
these designated places were inserted for no purpose.
The rule of construction is otherwise. What the legis-
lature intended to prevent and punish was the enticing
or enveigling of females of tender years into houses of
ill-fame, or places of like character by the lures, wiles,
snares and deceptions of designing and unscrupulous
persons, whereby such houses were enabled to operate
and keep going: Butler's App., 73 Pa. 448; Bucher v.
Com., 103 Pa. 528; Atkinson v. Schilman, 53 South 844;
Peer v. Dixon, 83 Atl. 180; State v. City of Camden, 19
Atl. 539; State v. McCrum, 38 Minn. 154.

*A. R. Osmer,* with him *Lee A. McCracken,* for appellee.

—The rule of construction known as "ejusdem generis" does not apply: Renick v. Boyd, 99 Pa. 555; Hilton's App., 116 Pa. 351; Weiss v. Swift, 36 Pa. Superior Ct. 376.

OPINION BY ORLADY, October 11, 1915:

The provisions of the Act of June 11, 1879, P. L. 142, entitled "An act to protect children from neglect and cruelty, and relating to their employment, protection, and adoption," are radically enlarged by the supplementary Act of May 28, 1885, P. L. 27, under which this defendant was tried and convicted.

This change is effected by clear and easily understood words, and so far as this defendant is concerned, it means that it was unlawful for him to take a female child, under the age of sixteen years, either for the purpose of prostitution, as that word is defined in our decisions, or for individual sexual intercourse, or to enveigle or entice any such female child into a house of ill-fame, or assignation, or elsewhere for the same purpose.

To hold otherwise, would be to take from the evident legislative intent, a very material feature of its primary purpose.

The question was raised by the defendant's second point, viz: "The learned court is respectfully requested to instruct the jury as to what constitutes the house or place into which the female must be enticed or inveigled, under the second count of the indictment," which was answered as follows, in the general charge: "If he entices her to go to a house of prostitution, assignation or elsewhere for the purpose of sexual intercourse, he is guilty. There is no particular plan of a house used for the purpose of prostitution or assignation: any house may be used for such a purpose. Any place may be used for such a purpose, providing it is a convenient place for such a purpose. So, anyone who entices a child to go to a house of prostitution, or assignation or elsewhere for the purpose of sexual intercourse is guilty under this

statute, whether the "elsewhere" be back of a wax house, on a side hill, in the woods, or any place that is convenient for that purpose, or any place such as persons desiring to commit that offense would naturally resort to."

The prohibition is directed against having sexual intercourse with a female child under the age of sixteen years; the place where the act is committed is not material under this statute, and in the very words of the statute the unlawful act may be committed "in a house of ill-fame or assignation or elsewhere."

The word "elsewhere" is significant, and is more comprehensive in meaning than the specially designated places preceding it. It is to be interpreted in its plain and dictionary sense—in another place, or in other places, somewhere or anywhere else,—than in a house of ill-fame or assignation. The ultimate design of the Act of 1885 was to safeguard female minors, under the age of sixteen years, from the baneful effects of, either indiscriminate prostitution, or of individual sexual intercourse, as the distinction between these terms is explained in Com. v. Lavery, 247 Pa. 139.

Every statute should be construed so as to vitalize, and not annul its prohibitions and mandates.

The cases relied on by the appellant, Butler's App., 73 Pa. 448; Pardee's App., 100 Pa. 408; Bucher v. Com., 103 Pa. 528, do not control in this one, as the legislative intent is made free from any uncertainty on the subject by the addition of the words "elsewhere" and "sexual intercourse" to the requirements of the earlier enactment.

Nor is it material to investigate the reputation of the child for chastity.

The protection is intended for chaste and unchaste. If she be chaste that she may continue a virgin, if she be unchaste, that she may not be further encouraged in her lawless course of living, and the evidence offered on this phase of the case was rightly rejected.

The other assignments of error were not pressed at

the agreement, and are fully covered in this opinion. All are overruled, and the judgment is affirmed. The record is remitted to the Court of Quarter Sessions of Venango County, with direction that the judgment there entered be fully carried into effect, and, to that end, that the defendant forthwith appear in that court, and that he be by that court committed to comply with such part of the sentence as had not been served and complied with at the time this appeal was made a supersedeas.

KEPHART and TREXLER, JJ., dissent. See page 214.